Justice Thomas
delivered the opinion of the Court. †
This case presents the question whether the 6-year statute of limitations in the False Claims Act (FCA or Act), see 31 U. S. C. § 3731(b)(1), governs FCA civil actions for retaliation, see § 3730(h). We hold that it does not and therefore conclude that the most closely analogous state limitations period applies.
I
The FCA prohibits any person from making false or fraudulent claims for payment to the United States. § 3729(a). Persons who do so are liable for civil penalties of up to $10,000 per claim and treble damages. Ibid. The Act sets forth two principal enforcement mechanisms for policing this proscription. First, the Attorney General may sue to rem *412 edy violations of § 3729. § 3730(a). Second, private individuals may bring qui tam actions in the Government’s name for §3729 violations. § 3730(b)(1); see Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U. S. 765, 769-772 (2000). The qui tam relator must give the Government notice of the action, and the Government is entitled to intervene in the suit. § 3730(b)(2). The relator receives up to 30 percent of the proceeds of the action, in addition to attorney’s fees and costs. §§ 3730(d)(1), (2).
The 1986 amendments to the FCA created a third enforcement mechanism: a private cause of action for an individual retaliated against by his employer for assisting an FCA investigation or proceeding. § 3730(h). Section 3730(h) provides in relevant part that
“[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.”
Remedies for retaliation include reinstatement, two times the amount of backpay plus interest, special damages, litigation costs, and attorney’s fees. Ibid.
The 1986 amendments also revised the language of the 6-year statute of limitations applicable to FCA actions. The previous version of the statute provided that "[a] civil action under section 3730 of this title must be brought within 6 years from the date the violation is committed.” § 3731(b) (1982 ed.). The 1986 amendments revised this provision to read:
*413 “(b) A civil action under section 3730 may not be brought—
“(1) more than 6 years after the date on which the violation of section 3729 is committed, or
“(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed .. . §3731 (2000 ed.).
In January 2001, relator Karen T. Wilson brought an FCA qui tarn and retaliation action against petitioners. Petitioners Graham County Soil and Water Conservation District and Cherokee County Soil and Water Conservation District are special-purpose local government entities; the other petitioners are various local and federal officials. Graham County District employed Wilson as a secretary. Wilson alleged that petitioners made numerous false claims for payment to the United States in connection with a federal disaster relief program, the Emergency Watershed Protection Program, App. 17-20, and in connection with agricultural programs administered by North Carolina but funded by the Federal Government, id., at 17-24.
Wilson contended, in addition, that Graham County District officials retaliated against her for aiding federal officials in their investigation of these false claims. Id., at 25-30. Wilson alerted federal officials to petitioners’ suspected fraudulent activities in December 1995 and cooperated with the ensuing investigation. Id., at 26-27. Because of her cooperation, the complaint alleged, Graham County District officials repeatedly harassed her from 1996 to 1997, eventually inducing her to resign in March 1997. Id., at 28-30.
Petitioners successfully moved to dismiss Wilson’s retaliation action as untimely. They argued that the 6-year limitations period provided in § 3731(b)(1) did not apply to Wilson’s *414 retaliation action. Absent an applicable federal limitations period, they asked the District Court to borrow North Carolina’s 3-year statute of limitations for retaliatory-discharge actions. The District Court agreed and dismissed the retaliation claim, since Wilson filed it more than three years after her March 1997 discharge. App. to Pet. for Cert. 67a-70a. The court certified that ruling for interlocutory appeal. 224 F. Supp. 2d 1042, 1050-1051 (WDNC 2002).
On interlocutory appeal, a divided panel of the Court of Appeals for the Fourth Circuit reversed. In the majority’s view, the plain language of §3731(b)(1) supplies a limitations period for retaliation actions, making it unnecessary to borrow one from North Carolina law. The court reasoned that § 3731(b)(1) governs § 3730(h) retaliation actions, because it applies its 6-year limitations period to “ '[a] civil action under section 3730.’ ” 367 F. 3d 245, 251 (2004) (brackets in original).
We granted certiorari to resolve a disagreement among the Courts of Appeals regarding whether § 3731(b)(1)’s 6-year statute of limitations applies to § 3730(h) retaliation actions or whether, instead, the most closely analogous state limitations period governs. 543 U. S. 1042 (2005). Compare Neal v. Honeywell Inc., 33 F. 3d 860, 865-866 (CA7 1994) (holding that FCA 6-year period applies), with United States ex rel. Lujan v. Hughes Aircraft Co., 162 F. 3d 1027, 1034-1035 (CA9 1998) (holding that most closely analogous state limitations period governs).
II
To determine the applicable statute of limitations for a cause of action created by a federal statute, we first ask whether the statute expressly supplies a limitations period. If it does not, we generally “borrow” the most closely analogous state limitations period. See North Star Steel Co. v. Thomas, 515 U. S. 29, 33-34 (1995); Reed v. Transportation Union, 488 U. S. 319, 324 (1989); Agency Holding Corp. v. *415 Malley-Duff & Associates, Inc., 483 U. S. 143, 157-165 (1987) (Scalia, J., concurring in judgment) (tracing history of borrowing state limitations periods). In the rare case, we have even borrowed analogous federal limitations periods in the absence of an expressly applicable one, see, e. g., id., at 150-157, but no party points to a reason why we should do so here, and we can think of none. The only arguably applicable express statute of limitations is the 6-year limit set forth in § 3731(b)(1). The question, then, is whether § 3731(b)(1) applies by its terms to retaliation actions under § 3730(h); if it does not, our cases dictate that the most closely analogous state limitations period applies.
Under § 3731(b)(1), “[a] civil action under section 3730 may not be brought... more than 6 years after the date on which the violation of section 3729 is committed.” Following ,the Court of Appeals’ lead and supported by the United States appearing as amicus curiae, Wilson argues that this language unambiguously applies to FCA retaliation actions. She points out that § 3731(b)(1) applies a 6-year limitations period to “a civil action under section 3730,” and that § 3730(h) actions arise under §3730; hence, she claims, the 6-year period governs § 3730(h) actions. See Neal, supra, at 865-866 (arguing same). We think the statute is more complex than this argument supposes. Statutory language has meaning only in context, see, e. g., Leocal v. Ashcroft, 543 U. S. 1, 9 (2004), and § 3731(b)(1), read in its proper context, does not govern § 3730(h) actions for retaliation.
Section 3731(b)(1) is ambiguous, rather than clear, about whether a § 3730(h) retaliation action is “a civil action under section 3730.” Another reasonable reading is that it applies only to actions arising under §§ 3730(a) and (b), not to § 3730(h) retaliation actions. That reading is suggested by the language in § 3731(b)(1) tying the start of the time limit to “the date on which the violation of section 3729 is committed.” In other words, the time limit begins to run on the date the defendant submitted a false claim for payment. *416 See supra, at 412-413. This language casts doubt on whether § 3731(b)(1) specifies a limitations period for retaliation actions. For even a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim, leaving the limitations period without a starting point if § 3731(b)(1) is applicable. A retaliation plaintiff, instead, need prove only that the defendant retaliated against him for engaging in “lawful acts done ... in furtherance of” an FCA “action filed or to be filed,” § 3730(h), language that protects an employee’s conduct even if the target of an investigation or action to be filed was innocent.[1] Applying § 3731(b)(1) to FCA retaliation actions, then, sits uneasily with § 3731(b)(l)’s language, which assumes that well-pleaded “action[s] under section 3730” to which it is applicable include a “violation of section 3729” certain from which to start the time running. Section 3731(b)(1), by contrast, naturally applies to well-pleaded §§ 3730(a) and (b) actions. They require the plaintiff to plead that the defendant submitted a false claim for payment, and therefore necessarily specify when §3731(b)(1)’s time limit begins. This textual anomaly, at a minimum, shows that § 3731(b)(1) is ambiguous about whether “action under section 3730” means all actions under § 3730, or only §§ 3730(a) and (b) actions.
*417 Wilson and the United States dispute that the statute contains this anomaly, and instead urge that it clearly applies by its terms to all §3730 actions. They point out that every § 3730(h) action requires the plaintiff to prove that he engaged in protected conduct related to at least a suspected violation of §3729, and argue that §3731(b)(l)’s limitations period simply begins to run on the date of the suspected violation. Assuming, without deciding, that § 3730(h) retaliation actions have as an element a suspected violation of § 3729, their interpretation indeed removes the anomaly, but only at the cost of reading into the statute the word “suspected” before the phrase “violation of section 3729.” Section 3731(b)(1) speaks of “violation[s] of section 3729”— actual, not suspected, ones. Wilson and the United States answer that this argument proves too much, because even §§ 3730(a) and (b) actions involve only “suspected” violations of § 3729 at the pleading stage of litigation; but this response misses the point. Every § 3730(a) or (b) plaintiff who states or proves a valid claim for relief must allege or prove an actual violation of §3729; retaliation plaintiffs need only allege or prove a suspected violation of §3729 (or so we are willing to assume). The point is that § 3731(b)(l)’s language applies naturally to all successfully pleaded or proved retaliation actions only if one reads “suspected” into its terms, as the dissent essentially concedes. See post, at 425-426 (opinion of Breyer, J.).
Section 3731(b)(1)’s literal text, then, is ambiguous. Wilson and the Government ask us to read it as if it said “the [suspected or actual] violation of section 3729.” Petitioners ask us to read § 3731(b) as if it said “civil action under section 3730[(a) or (b)].”
Two considerations convince us that the better way to resolve this ambiguity is to read the 6-year period to govern only §§ 3730(a) and (b) actions, and not § 3730(h) retaliation actions. First, the very next subsection of the statute, § 3731(c), also uses the similarly unqualified phrase “action *418 brought under section 3730” to refer only to §§ 3730(a) and (b) actions. Section 3731(c) provides that “[i]n any action brought under section 3730, the United States shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence.” As Wilson and the United States concede, the context of this provision implies that the phrase “any action brought under section 3730” is limited to § 3730(a) actions brought by the United States and § 3730(b) actions in which the United States intervenes as a party, as those are the types of § 3730 actions in which the United States necessarily participates. Otherwise, the United States would be “required to prove all essential elements of the cause of action,” § 3731(c), in all §3730 actions, regardless of whether it participated in the action (a consequence the dissent implicitly embraces by claiming that “any action brought under section 3730” in § 3731(c) means all § 3730 actions, see post, at 423-424 (opinion of Breyer, J.)). This implicit limitation of the phrase “action under section 3730” shows that Congress used the term “action under section 3730” imprecisely in § 3731 and, in particular, that Congress sometimes used the term to refer only to a subset of § 3730 actions. It is reasonable to read the same language in § 3731(b)(1) to be likewise limited.
Second, reading § 3731(b)(1) to apply only to §§ 3730(a) and (b) actions is in keeping with the default rule that Congress generally drafts statutes of limitations to begin when the cause of action accrues. We have repeatedly recognized that Congress legislates against the “standard rule that the limitations period commences when the plaintiff has a complete and present cause of action.” Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U. S. 192, 201 (1997) (internal quotation marks omitted); see also Johnson v. United States, 544 U. S. 295, 305 (2005) (calling it “highly doubtful” that Congress intended a time limit on pursuing a claim to expire before the claim arose); Reiter v. Cooper, 507 U. S. 258, 267 (1993) (declining to coun- *419 tenanee the “odd result” that a federal cause of action and statute of limitations arise at different times “absen[t] . . . any such indication in the statute”); TRW Inc. v. Andrews, 534 U. S. 19, 37 (2001) (Scalia, J., concurring in judgment) (“Absent other indication, a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief” (internal quotation marks omitted)). Therefore, where, as the case is here, there are two plausible constructions of a statute of limitations, we should adopt the construction that starts the time limit running when the cause of action (here retaliation) accrues.[2]
This approach resolves the ambiguity in § 3731(b)(1) in petitioners’ favor. On the one hand, reading § 3731(b)(1) to exclude retaliation actions will generally start the limitations period running when the cause of action accrues. If § 3731(b)(1) excludes retaliation actions, then no express time limit applies to § 3730(h) actions, and we borrow the most closely analogous state time limit absent an expressly applicable one. See supra, at 414-415. The likely analogous state statutes of limitations virtually all start to run when the cause of action accrues — in retaliation actions, when the retaliatory action occurs.[3]
*420 The interpretation favored by Wilson and the Government, on the other hand, is in tension with this rule of construction. Under their reading, the statute of limitations *421 for FCA retaliation actions begins to run, at best, on the date the actual or suspected FCA violation occurred. Because that date will precede the retaliatory conduct, their reading starts the time limit running before the retaliation action accrues. Even more oddly, their reading allows a retaliation action to be time barred before it ever accrues — for example, if the employer discovers more than six years after the suspected violation of §3729 that an employee aided in investigating that fraud, then retaliates. As we have discussed, § 3731(b)(l),s text permits a construction that avoids these counterintuitive results — that “civil action under section 3730” means only those civil actions under §3730 that *422 have as an element a “violation of section 3729,” that is, §§ 3730(a) and (b) actions.
Granted, other textual evidence cuts against this reading of § 3731(b)(1). In particular, Congress used the phrase “brought under subsection (a) or (b) of section 3730” in § 3731(d); this, it is argued, shows that Congress could have been similarly precise in § 3731(b)(1) if it wished. In the context of this statute, however, that argument proves too much, since the same could be said of § 3731(c), which all agree uses the phrase “action under section 3730” in more limited, and less precise, fashion. See supra, at 417-418. We do not doubt that Congress could have drafted § 3731(b)(1) with more precision than it did, but the presence of the same inexact wording in § 3731(c) means that the more precise language in § 3731(d) casts little doubt on our reading of the statute.
* * *
For the reasons we have discussed, the FCA’s express limitations period does not apply to § 3730(h) actions. The most closely analogous state statute of limitations therefore applies. Judge Wilkinson, in his dissenting opinion below, concluded that the most closely analogous state statute of limitations in this case is North Carolina’s 3-year statute of limitations governing wrongful-discharge claims. See 367 F. 3d, at 261-262. The appropriate state statute of limitations to borrow, however, is not within the scope of the question we granted certiorari to decide, and the Court of Appeals did not pass on the point. We therefore leave that issue for remand. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Souter joins all but footnote 2 of this opinion.

 See United States ex rel. Karvelas v. Melrose-Wakefield Hospital, 360 F. 3d 220,236 (CA1 2004) (holding that protected conduct is “conduct that reasonably could lead to a viable FCA action”); United States ex rel. Yesudian v. Howard Univ., 153 F. 3d 731, 740 (CADC 1998) (same); Childree v. UAP/GAAG CHEM, Inc., 92 F. 3d 1140, 1146 (CA11 1996) (holding that disclosure to employer of possible FCA violation protected conduct where litigation is a “distinct possibility” at the time of the disclosure); Fanslow v. Chicago Mfg. Center, Inc., 384 F 3d 469, 480 (CA7 2004) (protected conduct is where employee had reasonable, good-faith belief that the employer is committing fraud against the United States); Wilkins v. St. Louis Housing Auth., 314 F. 3d 927, 933 (CA8 2002) (same); Moore v. California Inst. of Tech. Jet Propulsion Lab., 275 F. 3d 838, 845-846 (CA9 2002) (same). We endorse none of these formulations; we note only that all of them have properly recognized that proving a violation of §3729 is not an element of a § 3730(h) cause of action.

 Justice Stevens, we believe, misapplies this interpretive rule. Post, p. 422 (opinion concurring in judgment). He argues that § 3731(b)(1) does not govern § 3730(h) actions because “it is so unlikely that a legislature would actually intend” to start the statute of limitations running before the cause of action accrues that he “would presume that the anomaly was the product of a drafting error” regardless of whether the text is ambiguous. Dodd v. United States, ante, at 362, n. 1 (Stevens, J., dissenting). This is not the proper analysis. Section 3731(b)(1) is ambiguous because its text, literally read, admits of two plausible interpretations. Supra, at 415-417. We apply the rule that Congress generally drafts statutes of limitations to begin when the cause of action accrues to resolve that ambiguity, not to create it in the first instance.

 Ala. Code § 6-2-38 (West 1993) (catchall for tort actions not otherwise enumerated); § 36-26A-4(a) (West 2001) (retaliation action for whistle-blowers); Alaska Stat. § 09.10.070 (Lexis 2004) (catchall); Ariz. Rev. Stat. Ann. § 12-541 (West 2003) (wrongful termination); Ark. Code Ann. § 16- *420 56-115 (Lexis 1987) (catchall); § 21-1-604 (Lexis 2004) (retaliation action for whistle-blowers); Cal. Civ. Proc. Code Ann. § 335.1 (West Supp. 2005) (personal injuries); § 343 (West 1982) (catchall); Colo. Rev. Stat. § 13-80-102(1)(g) (Lexis 2004) (catchall); Conn. Gen. Stat. §§ 52-577, 31-51m (2005) (catchall for tort actions; retaliation action for whistle-blowers); Del. Code Ann., Tit. 10, § 8119 (Lexis 1999) (personal injuries); Tit. 29, § 5115 (Lexis 2003) (retaliation action for whistle-blowers); D. C. Code § 12-301(8) (West Supp. 2005) (catchall); Fla. Stat. §§ 112.3187(8)(a), 448.103 (2003) (whistle-blower actions); Ga. Code Ann. § 9-3-33 (Lexis 1982) (personal injuries); Haw. Rev. Stat. §378-63(a) (Supp. 2004) (retaliation action for whistle-blowers); Idaho Code §§ 5-224, 6-2105(2) (Lexis 1998) (catchall; retaliation action for whistle-blowers); Ill. Comp. Stat. Ann., ch. 735, § 5/13 — 202 (West 2003) (personal injuries); Ind. Code §34-11-2-4 (2004) (personal injuries); Iowa Code § 614.1 (2003) (personal injuries); Kan. Stat. Ann. §§60-513, 75-2973(h) (Supp. 2003) (catchall; retaliation action for whistle-blowers); Ky. Rev. Stat. Ann. § 413.120(7) (Lexis Supp. 2004) (catchall); § 61.103(2) (Lexis 2004) (retaliation action for whistle-blowers); La. Civ. Code Ann., Art. 3492 (West 1994) (“[djelictual actions”; starts running on day injury or damage sustained, which is when the cause of action generally accrues for retaliatory actions); Me. Rev. Stat. Ann., Tit. 14, § 752 (West 1980) (catchall); Md. Cts. & Jud. Proc. Code Ann. § 5-101 (Lexis 2002) (catchall for civil actions at law); Mass. Gen. Laws, ch. 260, § 2A, ch. 149, § 185(d) (West 2004) (catchall for tort actions for personal injuries; retaliation action for whistle-blowers); Mich. Comp. Laws Ann. § 15.363(1) (West 2004) (retaliation action for whistle-blowers); Minn. Stat. § 541.07 (2004) (personal injuries); Miss. Code Ann. § 15—1—49 (Lexis 2003) (catchall); Mo. Rev. Stat. §516.120 (2000) (catchall); Mont. Code Ann. §39-2-911(1) (2003) (wrongful discharge); Neb. Rev. Stat. §§25-207, 25-212 (1995) (catchall); Nev. Rev. Stat. § 11.190.4(e) (2003) (personal injuries); N. H. Rev. Stat. Ann. §508:4 (West 1997) (personal actions other than slander or libel); N. J. Stat. Ann. §§ 2A:14-1, 34:19-5 (West 2000) (catchall; retaliation action for whistle-blowers); §2 A:14-2(a) (West Supp. 2005) (personal injuries); N. M. Stat. Ann. § 37-1-4 (1990) (catchall); N. V. Civ. Prac. Law Ann. § 215.4 (West 2003) (“action to enforce” a statute “given wholly or partly to any person who will prosecute”); N. Y. Lab. Law Ann. § 740.4(a) (West 2002) (retaliation action for whistle-blowers); N. C. Gen. Stat. §§ 1-52, 126-86 (Lexis 2003) (catchall; retaliation action for whistle-blowers); N. D. Cent. Code §28-01-16 (Lexis 1991) (catchall); §34-01-20.3 (Lexis 2004) (retalia *421 tion actions for whistle-blowers); Ohio Rev. Code Ann. § 2305.09 (Lexis Supp. 2003) (catchall for torts); § 4113.52(D) (Lexis 2001) (retaliation action for whistle-blowers); Okla. Stat. Ann., Tit. 12, § 95 (West Supp. 2005) (catchall); Ore. Rev. Stat. § 12.110(1) (2003) (catchall); 42 Pa. Cons. Stat. § 5524(7) (2002) (catchall); Pa. Stat. Ann., Tit. 43, § 1424(a) (Purdon 1991) (retaliation action for whistle-blowers); R. I. Gen. Laws § 9-1-14(a) (Lexis 1997) (injuries to the person); § 28-50-4 (Lexis 2003) (retaliation action for whistle-blowers); S. C. Code Ann. § 15-3-530 (West 2005) (catchall); § 8-27-30(B) (West Supp. 2004) (retaliation action for whistle-blowers); S. D. Codified Laws § 15-2-14(3) (West 2004) (action for personal injury); Term. Code Ann. § 28-3-104(a)(1) (Lexis 2000) (personal injuries); Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West 2002) (personal injuries); Tex. Govt. Code Ann. § 554.005 (West 2004) (retaliation action for whistle-blowers); Utah Code Ann. §§ 78-12-29(1), (2) (Lexis 2002) (liability created by statute of foreign state; liability created by statute); § 67-21-4(2) (Lexis 2004) (retaliation action for whistle-blowers); Vt. Stat. Ann., Tit. 12, § 511 (Lexis 2002) (catchall); Va. Code Ann. §§ 8.01-243(A), 8.01-248 (Lexis 2000) (personal injuries; catchall); Wash. Rev. Code § 4.16.080(2) (2004) (catchall for injuries to person); W. Va. Code §55-2-12 (Lexis 2000) (catchall); § 6C-1-4(a) (Lexis 2003) (retaliation action for whistle-blowers); Wis. Stat. § 893.57 (2003-2004) (intentional torts); Wyo. Stat. §§ 1-3-105(a)(iv)(C), 9-11-103(c) (2003) (catchall; retaliation action for whistle-blowers). But see Vt. Stat. Ann., Tit. 12, § 512 (Lexis 2002) (personal injury statute of limitations starts on the date of the discovery of the injury); D. C. Code § 1-615.54 (West 2001) (whistle-blower action may be brought within one year of the time the employee learns of the retaliation). We stress that these are only the likely candidates for analogous state statutes of limitations; it may well not be an exhaustive or authoritative list of the possibilities.