

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00340-CV

———————————————

SYLVIA KING-BOLING, Appellant

V.

CORNERSTONE BAPTIST CHURCH OF ARLINGTON, Appellee

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-333058-22

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellant Sylvia King-Boling filed her lawsuit on the last day of the limitations period, and she waited approximately three months to serve Appellee Cornerstone Baptist Church of Arlington. When Cornerstone moved for summary judgment on its statute of limitations defense, King-Boling did not respond, and the trial court entered judgment for Cornerstone. Just as the judgment was about to become final, King-Boling moved for a new trial and for leave to file a late summary judgment response, both of which the trial court denied. King-Boling now argues that the trial court erred by (1) denying her motion to file a late response, (2) granting summary judgment, and (3) denying her motion for a new trial. We will affirm.

## I. Background

King-Boling's employment was terminated on September 26, 2019, and she filed a wrongful-termination suit against Cornerstone on the last day of the limitations period: September 27, 2021.[1] Citation issued on October 5, but King-Boling's counsel waited more than 85 days—until December 30—to deliver that citation to the process server. Within hours of the process server receiving the citation, Cornerstone was served.

---

[1]King-Boling asserted her claim under *Sabine Pilot*; she pleaded that she had been discharged from her employment for the sole reason that she had refused to perform criminal acts. *See Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985) (creating exception for "the discharge of an employee for the sole reason that the employee refused to perform an illegal act").

Cornerstone filed a motion for summary judgment on the limitations issue. It relied upon the undisputed dates listed in King-Boling's petition and reflected in the record—the date of her termination, the date she filed suit, the date citation issued, and the date of service. King-Boling did not respond to the motion, nor did she appear at the June 2022 summary judgment hearing. The trial court entered judgment for Cornerstone.

More than 30 days later,[2] in July 2022, King-Boling filed an unsworn motion seeking both a new trial and leave to file a late summary judgment response. In the declaration attached to this motion, King-Boling's counsel (Counsel) claimed that he had "somehow missed" the email containing the citation on October 5, 2021, and that he did not realize this oversight until December. As for the failure to respond to the summary judgment motion, Counsel stated that the motion and hearing notice had been "viewed at [his] home" rather than his office and that he had "failed to place [them] on [his] office calendar due to all the changes and disruptions that have been hampering [his] life [for more than two years] since March 2020."[3] Counsel listed an impressive number of "disruptions" to contextualize his lapses:

---

[2]The trial court's summary judgment was signed on June 2, 2022. The thirtieth day after that judgment was Saturday, July 2, and because July 4 was a holiday, the next business day was Tuesday, July 5, 2022. *See* Tex. R. Civ. P. 4, 329b(a). King-Boling filed her motion that day after 6:00 p.m.

[3]Counsel's declaration stated that "[h]ad [the motion for summary judgment] been viewed at [his] office [rather than his home in April 2022], it would have been calendared on the docket management system at that time, which [wa]s [his] standard

3

- he had been trying to avoid contracting COVID-19 since 2020;

- he had not accepted any new clients since February 2020 due to COVID-19;

- he had lost several employees between March 2020 and September 2021;

- he had not been able to interview new staff due to the risk of COVID-19 exposure;

- he had suffered from "food shortages, toilet paper hoarding, mail delays," and other COVID-19 complications;

- he had migrated to Microsoft 365 in February 2021 "to facilitate telecommuting";

- he and his wife had moved to a new home in March 2021;

- he had shifted to working from home in June 2021 to avoid COVID-19 exposure;

- he had been "inundated with other legal responsibilities"[4] of unspecified dates and durations;

- he and his wife had moved again in February 2022;

- his wife's travel had left him with "all domestic responsibilities" in March 2022;

---

practice." But the same declaration stated that Counsel had "beg[u]n to work from home more and less often at the office after June 2021" and that he had shifted "to Microsoft 365 to facilitate telecommuting." Counsel did not explain why his "standard [calendaring] practice[s]" had not evolved to reflect that he had "beg[u]n to work from home more."

[4]Although Counsel's declaration stated that he had been "inundated with other legal responsibilities," the declaration also stated that Counsel had not accepted any new clients since February 2020. And during the July 2022 hearing on King-Boling's motion for new trial, Counsel reiterated that he "ha[d not] signed up a new person since February of 2020" and that he was "down to about six cases."

- he had been "reviewing [his] tax return" at an unspecified point in time and for an unspecified duration; and

- he had switched internet service providers at his residence in early April 2022.

The trial court denied King-Boling's motion.[5]

## II. Discussion

King-Boling challenges three alleged trial court errors:[6] (1) denying her motion for leave to file a late summary judgment response, (2) granting Cornerstone's motion for summary judgment, and (3) denying King-Boling's motion for new trial.

## A. Motion for Leave: The trial court did not abuse its discretion.

King-Boling claims that the trial court abused its discretion by denying her motion for leave to file a late summary judgment response.

### 1. Standard of review

Generally, a nonmovant must file and serve its summary judgment evidence at least seven days before the hearing. Tex. R. Civ. P. 166a(c), (d). Evidence may be filed later—even after the summary judgment hearing—if the trial court grants permission. *See* Tex. R. Civ. P. 166a(c); *Hand v. Old Republic Nat'l Title Ins. Co.*, No. 02-10-00347-CV, 2011 WL 1103725, at *3 (Tex. App.—Fort Worth Mar. 24, 2011, no

---

[5]Cornerstone contends that the trial court did not rule on the motion for leave to file a late response, but the trial court's order denied "the [joint] motion for new trial and motion for leave to late file a response . . . in its entirety."

[6]King-Boling lists four issues in her brief, but we restructure those issues and construe them as three.

pet.) (mem. op.). But "no evidence can be filed after the court rules on the [summary judgment] motion." *Hand*, 2011 WL 1103725, at *3; *see* Tex. R. Civ. P. 166a(c) (providing for summary judgment based on evidence "on file at the time of the hearing, or filed thereafter and *before judgment* with permission of the court" (emphasis added)); *Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 162 (Tex. App.—San Antonio 1997, writ denied).[7]

We apply an abuse of discretion standard when reviewing a trial court's ruling on a motion for leave to file a late summary judgment response. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 686–87 (Tex. 2002). Such a motion should be granted when the movant establishes good cause for failing to timely respond by showing that "(1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment." *Id.* at 688.

---

[7]*But see Mathis v. RKL Design/Build*, 189 S.W.3d 839, 842–43 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Stephens v. Dolcefino* for the rule that "[a] trial court may accept summary judgment evidence filed late, even after summary judgment, as long as the court affirmatively indicates in the record that it accepted or considered the evidence"); *Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (op. on reh'g) (stating rule, citing distinguishable cases that address evidence filed after hearing or filed to support motions for reconsideration or new trial).

## 2. Filed too late

King-Boling's motion for leave to file a late response came 30 days after the trial court entered summary judgment, and "no evidence can be filed after the court rules on the motion." *Hand*, 2011 WL 1103725, at *3; *see* Tex. R. Civ. P. 166a(c). For this reason alone, the trial court did not abuse its discretion by denying King-Boling's motion.

## 3. Undue delay or injury

We need not rely on that reason alone, though, because King-Boling also failed to establish the *Carpenter* elements. Although her unsworn motion for leave[8] and Counsel's attached declaration both attempted to explain the "accident[s] or mistake[s]" that caused King-Boling's "failure to respond"[9]—the first *Carpenter* element—neither document addressed the possibility of delay if the court granted the motion for leave[10]—the second *Carpenter* element. *See Carpenter*, 98 S.W.3d at 688.

---

[8]As in *Carpenter*, we "assum[e without deciding] that the trial court could consider counsel's unsworn argument under these circumstances in deciding whether [the movant] established good cause to allow a late response." *Carpenter*, 98 S.W.3d at 688.

[9]We need not address whether King-Boling's motion and affidavit were sufficient to establish "accident or mistake." *See* Tex. R. App. P. 47.1; *cf. Carpenter*, 98 S.W.3d at 688 (concluding that trial court did not "abuse[] its discretion in denying leave based upon counsel's bare assertion that he had 'miscalendared' the summary[ ]judgment hearing" with "no explanation of the [calendaring] error from which the trial court might determine that an accident or mistake had occurred").

[10]In the portion of King-Boling's motion that addressed her request for a new trial, she stated that "[t]he granting of a new trial will not occasion any undue delay or

7

In *Swett v. At Sign, Inc.*, we held that a trial court did not err by denying a party's motion for leave to file a late summary judgment response because the motion did not address the possibility of delay or injury. No. 2-08-315-CV, 2009 WL 1425161, at *2 (Tex. App.—Fort Worth May 21, 2009, no pet.) (per curiam) (mem. op.). The motion was filed one day before summary judgment was rendered, and although it discussed the circumstances and scheduling issues that led to the late response, it "wholly failed to establish that allowing the late response would not unduly delay or otherwise injure" the opposing party. *Id.* at *1–2; *see Brown v. Melissa 121/5 Partners, Ltd.*, No. 05-13-01189-CV, 2014 WL 3811120, at *2 (Tex. App.—Dallas Aug. 4, 2014, no pet.) (mem. op.) (holding similarly when trial court denied unsworn motion to file late response and motion "wholly failed to establish the second *Carpenter* element" and "d[id] not even mention the possibility of delay").

Here, too, King-Boling's motion and affidavit "wholly failed to [address or] establish that allowing the late response would not unduly delay or otherwise injure [Cornerstone]." *Swett*, 2009 WL 1425161, at *2. This omission was all the more glaring because, rather than filing her motion a day before judgment was rendered as in *Swett*, King-Boling filed her motion more than 30 days after judgment was

prejudice" and she offered to "pay any reasonable fee occasioned by the failure to respond and failing to appear for the hearing." Even assuming the trial court could consider this unsworn statement, and even putting aside its conclusory nature, the statement said nothing about the trial court's consideration of a late response as distinct from a new trial.

8

rendered, when the judgment was on the brink of finality. The mere date of the motion's filing indicated that allowing the late response would have caused some delay, and King-Boling failed to address the issue at all. *See Galindo v. Imperial Grp., L.P.*, No. 2-04-040-CV, 2005 WL 1244691, at \*3 (Tex. App.—Fort Worth May 26, 2005, no pet.) (mem. op.) (reviewing motion for leave to file late response and clarifying that "[u]ndue prejudice depends on whether filing the late response will delay trial or significantly hamper the opposing party's ability to prepare for trial").

Therefore, the trial court did not abuse its discretion by denying King-Boling's motion for leave, and we overrule King-Boling's challenge to that ruling.

## B. Summary Judgment: The evidence supported judgment on limitations.

Next, King-Boling argues that the evidence was legally insufficient to support Cornerstone's motion for summary judgment.

### 1. Standard of review

We review a summary judgment de novo. *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 460 (Tex. 2023); *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). We view the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable factfinders could, disregarding evidence contrary to the nonmovant unless reasonable factfinders could not, and resolving any doubts in the nonmovant's favor. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

9

The statute of limitations is an affirmative defense, *see* Tex. R. Civ. P. 94, and a defendant is entitled to summary judgment on such an affirmative defense if the defendant conclusively proves (1) when the cause of action accrued and (2) that the statute of limitations has run. *Draughon*, 631 S.W.3d at 89; *see* Tex. R. Civ. P. 166a(b), (c). "If service is diligently effected after limitations has expired, the date of service will relate back to the date of filing," but if the plaintiff fails to exercise due diligence in the issuance and service of citation, the "timely filed suit will not interrupt the running of limitations." *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007); *see Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex. 1990). Accordingly, "'[w]hen failure to timely serve the defendant has been shown,' the defendant moving for summary judgment has carried its burden to prove conclusively that limitations expired, and 'the burden shifts to the plaintiff . . . to explain the delay'" by "rais[ing] a material fact issue concerning the diligence of service efforts." *Draughon*, 631 S.W.3d at 94 (first quoting *Murray*, 800 S.W.2d at 830; and then quoting *Proulx*, 235 S.W.3d at 216).

## 2. Conclusive evidence of limitations

Cornerstone's motion for summary judgment conclusively established the elements of its limitations defense.

It is undisputed that King-Boling's claim began to accrue when her employment was terminated on September 26, 2019, that the lawsuit was filed on September 27, 2021, that citation was issued on October 5, 2021, and that Cornerstone was served on December 30, 2021. Cornerstone's summary judgment

10

motion identified these dates and attached the documents establishing them—King-Boling's original petition, the citation on file with the trial court, and the return of service on file with the trial court. Based on these undisputed dates and the undisputed two-year limitations period,[11] Cornerstone conclusively established that King-Boling's lawsuit had been filed on the last day of the limitations period and that King-Boling had failed to serve Cornerstone for approximately three months thereafter. Because Cornerstone was not timely served before the statute of limitations expired, the burden shifted to King-Boling to raise a fact issue regarding her due diligence. *See Draughon*, 631 S.W.3d at 88–89, 94.

King-Boling claims that she raised such a fact issue, but because she did not file a timely response to the summary judgment, she raised no fact issues at all. Based on Cornerstone's conclusive evidence of its statute of limitations defense and on King-Boling's failure to produce any evidence raising a fact issue on due diligence, the trial court properly granted summary judgment. *See* Tex. R. Civ. P. 166a(c) (requiring summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law"). We overrule King-Boling's challenge to this ruling.

---

[11]The parties agree that King-Boling's claim is governed by a two-year statute of limitations, *see Riddle v. Dyncorp Intern. Inc.*, 666 F.3d 940, 943 (5th Cir. 2012); *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 80 (Tex. App.—San Antonio 1996, writ denied), *disapproved of on other grounds by Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019), so we do not address this issue on appeal.

**C.    Motion for New Trial:  The trial court did not abuse its discretion.**

Finally, King-Boling argues that the trial court abused its discretion by denying her motion for new trial.

**1.    Standard of review**

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *B. Gregg Price, P.C. v. Series 1 - Virage Master LP*, 661 S.W.3d 419, 423 (Tex. 2023).    Under *Craddock v. Sunshine Bus Lines*—which both parties agree applies here[12]—a defaulting party is entitled to a new trial when: "(1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff." *Id.* at

---

[12]Both parties agree that *Craddock* applies.  *Cf. Carpenter*, 98 S.W.3d at 686 (holding *Craddock* does not apply when nonmovant discovers mistake before summary judgment but leaving open question of "whether *Craddock* should apply when a nonmovant discovers its mistake after the summary[ ]judgment hearing or rendition of judgment").  The issue is not dispositive in this case because, generally, "[m]istake by a party or the attorney for the party, not induced by the opposing party, is not a reason for granting a new trial." *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *see Rivera v. Henderson*, No. 01-21-00418-CV, 2022 WL 3722320, at *13 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet.) (mem. op.) (same, quoting *Malooly*); *Ruiz v. Ruiz*, No. 02-14-00047-CV, 2014 WL 4458952, at *1 (Tex. App.—Fort Worth Sept. 4, 2014, pet. denied) (mem. op.) (similar, citing *Malooly*).  Therefore, we assume without deciding that *Craddock* applies. *Cf. Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 927 (Tex. 2009) (noting that *Carpenter* "stressed that . . . the defaulting party realized its mistake before judgment" and applying *Craddock* when counsel failed to appear for trial due to belief that trial court was aware of scheduling conflicts).

423–24; *see Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. [Comm'n Op.] 1939).

## 2. No evidence of meritorious defense

The second *Craddock* element—that the defaulting party "set[] up a meritorious defense"—is dispositive here. *See Craddock*, 133 S.W.2d at 126. King-Boling argues that she satisfied this element by setting up a due-diligence defense to the statute of limitations. The setting up of a meritorious defense required King-Boling to have alleged facts that would constitute a defense to limitations. *Dolgencorp of Tex.*, 288 S.W.3d at 928. King-Boling wholly failed to do so.

"The duty to exercise diligence is a continuous one, extending from the date suit is filed until service is obtained." *Perez v. Thomas*, No. 02-18-00253-CV, 2019 WL 2432155, at *2 (Tex. App.—Fort Worth June 6, 2019, no pet.) (mem. op.); *Erven v. Springer*, No. 02-16-00350-CV, 2017 WL 2471096, at *3 (Tex. App.—Fort Worth June 8, 2017, no pet.) (mem. op.). When assessing due diligence, the question is "whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Proulx*, 235 S.W.3d at 216; *see Perez*, 2019 WL 2432155, at *2 (similar). Although this is generally a fact question, it can be decided as a matter of law when no explanation is offered for the delay or when the lapse of time and the plaintiff's actions conclusively negate diligence. *Perez*, 2019 WL 2432155, at *2; *see Proulx*, 235 S.W.3d at 216 (noting

that diligence may be determined as a matter of law when, for example, "one or more lapses between service efforts are unexplained or patently unreasonable").

King-Boling argues that the meaning of "due diligence" was redefined in the COVID-19 pandemic era[13] and that the delayed service of Cornerstone was justified by the "disruptions" in her Counsel's life—his loss of staff, his shift to telecommuting, his residential moves, and his wife's travel plans, to name a few. Nowhere in Counsel's declaration did he claim that he made any efforts to serve Cornerstone between October 5, 2021,[14] and December 30, 2021. As to the "disruptions" listed in Counsel's declaration, they did not evidence due diligence but simply provided excuses for failing to exercise due diligence.[15]

---

[13]King-Boling offers no authority to support such a proposition and we do not so hold. While she quotes from and emphasizes the Texas Supreme Court's First Emergency Order Regarding COVID-19, that Order was issued in March 2020, and it was amended and superseded numerous times before King-Boling filed her lawsuit on September 27, 2021. *See First Emergency Order Regarding COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. 2020). The Fortieth Emergency Order in effect on September 27, 2021, did not relieve King-Boling of her duty to diligently serve Cornerstone, nor did the Forty-Third Emergency Order, which was in effect during the due-diligence period below. *See Forty-Third Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 929 (Tex. 2021) (amending and renewing Fortieth Emergency Order, effective Oct. 1, 2021); *Fortieth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 911 (Tex. 2021) (effective Aug. 1).

[14]King-Boling obtained citation eight days after filing suit, and for purposes of our analysis, we assume without deciding that she raised a fact issue regarding her exercise of due diligence during this period.

[15]At the hearing on King-Boling's motion for new trial, Counsel admitted that the delayed service of Cornerstone was because he "was distracted by other matters."

Even if a good excuse could substitute for due diligence, none of the excuses offered occurred within the relevant time period. Counsel's declaration recited numerous life events from March 2020 through September 2021 and from February 2022 through April 2022,[16] but the primary period of delayed service was from October 5, 2021 to December 30, 2021. Counsel admitted that he had "somehow missed" the citation that issued on October 5, but he did not explain how or why he had missed it, nor did he explain why a reasonably prudent, diligent person—who knew that the case had been filed on the last day of the limitations period—would have failed to follow up on the case until December 30. *Cf. Erven*, 2017 WL 2471096, at *4 (holding nonmovant failed to raise fact issue on due diligence when affidavits "wholly failed to explain [several] significant periods of inaction" including a "nearly six-week gap between when the suit was filed . . . and when [the plaintiff's] law firm sent the citation to [the process server's] company for service").

Because King-Boling alleged no facts that would support her claim of due diligence between October 5, 2021 and December 30, 2021, King-Boling failed to set up a meritorious defense. Absent this second *Craddock* element, the trial court did not

---

[16]Counsel's declaration also referenced several undated tasks that took his attention—such as working on *Coffey v. Tex. Parks & Wildlife Dep't*, No. 12-21-00015-CV, 2021 WL 4613972 (Tex. App.—Tyler Oct. 6, 2021, pet. denied) (mem. op.), and reviewing his tax returns—but he did not identify the deadlines associated with these tasks, so it is unclear if such tasks occurred between October 5, 2021 and December 30, 2021.

abuse its discretion by denying her motion for new trial. *See Craddock*, 133 S.W.2d at 126. We overrule King-Boling's challenge to this ruling.

### III. Conclusion

Having overruled all of King-Boling's issues, we affirm the trial court's summary judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: April 27, 2023